UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HERTA MARTHA SHIKAPWASHYA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:17-CV-01961-AGF |
| | ) | |
| URBAN LEAGUE OF METROPOLITAN ST. LOUIS, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Defendant Urban League of Metropolitan St. Louis to dismiss Plaintiff Herta Martha Shikapwashya's complaint. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff, proceeding pro se, alleges in her complaint that she was subjected to employment discrimination by Defendant in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*., on the basis of national origin, color, and sex, as well as harassment and retaliation. Plaintiff, an African-American female of African origin,[1] was employed by Defendant from January 10, 2000, until she was terminated on September 13, 2016. She was promoted five times, most recently to the position of Vice President of workforce development programs. She contends that between August 2015 and September 2016, her supervisor, the president and chief executive officer of Defendant, engaged in progressively discriminatory, harassing, and

---

[1] Plaintiff does not specify her country of origin.

1

retaliatory behaviors toward Plaintiff. Plaintiff claims that her supervisor began demonstrating favoritism toward male subordinates and lighter-skinned African-American employees. In her complaint, Plaintiff details numerous examples of the alleged discriminatory conduct, including cyber stalking and home invasion by her supervisor and other former employees of Defendant. After Plaintiff was terminated in September 2016, she claims that Defendant placed a mugshot of Plaintiff on the doors of Defendant's Jennings office, and that the mugshot was posted during a job fair open to the general public.

After her termination, Plaintiff claims she sent a certified service letter requesting the reason for her termination to Defendant's human resources director, which was returned. She then sent a second service letter, to which Defendant responded, indicating that the reason for Plaintiff's termination was her failure to contact the representative of the St. Louis Agency on Training and Employment, which resulted in a loss of funding. Plaintiff contends this was inaccurate, false, and untrue.

On April 4, 2017, Plaintiff filed a charge of discrimination with the Missouri Commission of Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"). In her charge of discrimination, Plaintiff contends that since December 2014, her supervisor would sexually harass her every six months. She reported that during the summer of 2015, she was not selected for the female employee of the year award and, in December 2015, she was not allowed to hire the individuals she believed were the best candidates for her program. She also claimed that since December 2015, Plaintiff's supervisor continued to harass her by invading her home, declining to

answer budget questions, delegating her responsibilities to her subordinates, placing listening devices in her office, denying her the ability to have a company laptop, and damaging her personal laptop. Since her discharge, Plaintiff claims her supervisor has continued to retaliate against and harass her. Plaintiff checked boxes on the charge of discrimination indicating that she was discriminated against on the basis of her race, color, sex, national origin, and age, as well as retaliation.

Plaintiff obtained a right to sue letter on April 14, 2017, and she filed this lawsuit on July 12, 2017. Plaintiff does not separate her complaint into separate counts, but she alleges violations of Missouri's service letter statute, Mo. Rev. Stat. § 290.140; mail fraud; and discrimination, harassment, and retaliation on the basis of national origin, sex, and color in violation of Title VII of the Civil Rights Act of 1964. Defendant now moves to dismiss claims contained in the complaint that it contends are not related to those set forth in the charge of discrimination, as well as claims that were untimely filed. In addition, Defendant seeks to dismiss Plaintiff's claims for mail fraud and service letter violations, as well as allegations of conduct based on factors other than those protected under Title VII.

## **LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not

3

required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.* at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679). Within this context, a complaint filed pro se must also be liberally construed. *Topchian v. J.P. Morgan Chase Bank, N.A.,* 760 F.3d 843, 849 (8th Cir. 2014).

The elements of a prima facie case are relevant to a plausibility determination. *Von Bokel v. McHugh*, No. 4:13-CV-2517 CAS, 2015 WL 357081, at *6 (E.D. Mo. Jan. 27, 2015). The Eighth Circuit has stated that to survive a motion to dismiss "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Gregory v. Dillards, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation marks and citation omitted).

> [A] plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims rather than facts that are merely consistent with such a right. While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint.

*Id*. (quotation marks and internal citations omitted).

4

**DISCUSSION**

Service Letter Violation

Defendant first argues that Plaintiff failed to state a claim under Mo. Rev. Stat. § 290.140, or the Missouri "service letter statute," including failing to properly plead damages. The service letter statute "essentially provides that an employer must give a letter to a discharged employee stating, inter alia, why the employee was discharged." *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 737 n.1 (8th Cir. 1985). "Thus, if an employee meets the statutory prerequisites to be entitled to a service letter, he has a cause of action if the corporation fails to issue the letter or issues a letter not conforming to all the statutory requirements."[2] *Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 56 (Mo. 1981).

The service letter statute provides that any employer violating the statute "shall be liable for compensatory but not punitive damages[,] but in the event that the evidence establishes that the employer did not issue the requested letter, said employer may be liable for nominal and punitive damages." Mo. Rev. Stat. § 290.140. "The failure to give a proper service letter constitute[s] an invasion of the employee's legal rights and without proof of any damages what[so]ever entitles the employee to a judgment for nominal damages." *Herberholt v. DePaul Community Health Center*, 625 S.W.2d 617, 622 (Mo. 1981) (en banc). Punitive damages may be awarded if a plaintiff can prove the presence of either legal or actual malice. *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061,

---

[2] Defendant does not dispute that Plaintiff meets the statutory prerequisites under the service letter statute and that it was obligated to provide her with a response.

5

1067 (8th Cir. 1988). In order to recover actual damages, a plaintiff must establish (1) that on or about an approximate date the plaintiff was either refused employment or hindered in obtaining such employment; (2) that the refusal or hindrance was caused by the absence or inadequacy of the service letter; (3) that the position the plaintiff had difficulty obtaining was actually open; and (4) the salary rate of that position. *Prewitt v. Factory Motor Parts, Inc.*, 747 F. Supp. 560, 566-67 (W.D. Mo. 1990) (c*iting Labrier v. Anheuser Ford, Inc.*, 621 S.W.2d 51, 57 (Mo. 1981)).

Here, Plaintiff claims that she was entitled to a service letter, and Defendant failed to respond to that letter in violation of the statute. Then, after sending a second certified letter, she contends that Defendant's reason for her termination, contained in its response, was inaccurate, false, or untrue. While Plaintiff may not have pled that her failure to obtain a service letter resulted in her inability to obtain subsequent employment, she has, at a minimum, stated a claim for nominal damages sufficient to survive a motion to dismiss. Moreover, accepting her allegations of her treatment after her termination, Plaintiff may be able to show actual malice on the part of Defendant for purposes of a punitive damages award. Therefore, Plaintiff has stated a claim as to the service letter violation.

Mail Fraud

Defendant next argues that Plaintiff failed to state a claim for mail fraud. Under the heightened pleading standard of Federal Rule of Civil Procedure 9(b), "allegations of fraud, including fraudulent concealment for tolling purposes, [must] be pleaded with particularity." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011). After

6

careful review of Plaintiff's complaint, Plaintiff has failed to allege any fraudulent conduct, and, further, fails to plead the "who, what, when, where, and how" required under the rule. *Id.* Therefore, Defendant's motion to dismiss as to the mail fraud allegation will be granted.

Failure to Exhaust Administrative Remedies

Defendant's motion to dismiss centers on Plaintiff's failure to exhaust administrative remedies. Defendant seeks the dismissal of Plaintiff's claims that were not timely asserted or included in her charge of discrimination. Defendant argues that Plaintiff's complaint alleges significantly more violations than were contained in her charge of discrimination and also includes allegations that occurred more than 300 days prior to the date Plaintiff filed her charge of discrimination, thereby rendering those claims untimely.

Title VII "establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). In order to exhaust administrative remedies, a claimant must file a timely charge of discrimination with the EEOC. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011) (citing *Worthington v. Union Pac. R.R.*, 948 F.2d 477, 479 (8th Cir. 1991)). Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. *Id.* As applicable in this case, an employee

who initially files a grievance with a State agency must file the charge with the EEOC within 300 days of the employment practice. *Id.* A claim is time barred if it is not filed within these time limits. *Id.*

The scope of a plaintiff's civil action is not necessarily limited to the specific allegations in the EEOC charge of discrimination. *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992). In determining whether an alleged discriminatory act falls within the scope of a Title VII claim, the administrative complaint must be construed liberally "in order not to frustrate the remedial purposes of Title VII," *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988), and the plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge. *Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 676 (8th Cir. 1995). Courts will liberally construe discrimination claims made by pro se litigants. *Shannon v. Ford Motor Co.*, 72 F.3d 678, 685 (8th Cir. 1996). However, there is a great difference between "liberally reading a claim which 'lacks specificity' . . . and inventing, *ex nihilo*, a claim which simply was not made" by the plaintiff. *Id.* (internal citation omitted).

The following conduct is specifically set forth in Plaintiff's charge of discrimination: (1) sexual harassment by her direct supervisor (since December 2014); (2) not selected for Female Employee of the Year (summer of 2015); (3) not permitted to hire the individuals that she believed were the best fit for the program that she was overseeing (December 2015); (4) home invasion (December 2015-present); (5) declining to answer budget questions (December 2015-date of termination); (6) delegating

responsibilities to subordinates (December 2015 – date of termination); (7) placing listening devices in Plaintiff's office (December 2015 – date of termination); (8) denying Plaintiff the ability to have a company laptop (December 2015 – date of termination); (9) damaging Plaintiff's personal laptop (December 2015 – present); and retaliation by stalking across state lines (date of termination – present).

Plaintiff's filed her charge of discrimination on April 4, 2017. Therefore, only those acts that occurred 300 days before April 4, 2017 (or June 8, 2016) are considered timely. In other words, Plaintiff's claim that she was not selected for Female Employee of the Year and that she was not permitted to hire individuals for her program are untimely.[3] Plaintiff does not seek equitable tolling of her claims based on actions that predate June 8, 2016. If discovery reveals facts supporting equitable tolling or estoppel, Plaintiff may file an amended complaint with such allegations.

Defendant also argues that some of Plaintiff's claims that were filed timely exceed the scope of her charge of discrimination. While Plaintiff's complaint is more specific than her charge of discrimination, it is plausible that some of her claims grow out of or are like or reasonably related to the substance of the allegations in the administrative charge. For example, Plaintiff's claim that her supervisor began delegating and

---

[3]   This bar does not apply to Plaintiff's claims of repeated harassment. The repeated nature of harassment necessitates that it occurs over a series of days or perhaps years, in direct contrast to discrete acts, and one act of harassment may not, on its own, be actionable. Therefore, provided that an act contributing to a repeated harassment claim occurs within the filing period, the entire series of harassing conduct may be considered for the purposes of determining liability. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117. Thus, any instances of repeated sexual harassment that that occurred within the filing period survive Defendant's motion to dismiss.

demonstrating favoritism toward male subordinates, as well as African American employees, is related to her charge of discrimination.

However, a number of claims in her complaint have no relationship to her charge of discrimination. For example, Plaintiff's claims regarding the following are unrelated to her charge of discrimination: (1) falsification of a report regarding the SOS program in July 2016; (2) attendance and participation in the Ferguson 1000; and (3) attendance of the October 2016 conference for the Youth Tech Program in Washington D.C. The Court notes that Plaintiff provides numerous and detailed instances during which she claims she was treated unfairly, and it is not clear whether those claims are related to the charge of discrimination. However, liberally construing Plaintiff's complaint, the Court will permit Plaintiff to proceed on her claims that are within the scope of the charge of discrimination that occurred between June 8, 2016 and the date of her termination.

Failure to State Claim under Title VII

Lastly, Defendant argues that Plaintiff failed to establish a prima facie case of discrimination under Title VII, in that her factual allegations demonstrate that much of the complained of "unlawful conduct" is not based on any statutorily protected class. To establish a prima facie case of discrimination, Plaintiff must show that (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, that similarly situated employees outside the protected class were treated differently). *See Fiero v. CSG Sys., Inc.*, 759

F.3d 874, 878 (8th Cir. 2014) (sex discrimination); *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853-54 (8th Cir. 2012) (race discrimination).

Here, Plaintiff's complaint contains a number of factual allegations that affirmatively and plausibly suggest that Defendant discriminated against her on the basis of her color, sex, and national origin. Plaintiff contends that she was an employee of Defendant for 16 years and held the title of Vice President of Workforce Development after being promoted on five occasions. She claims that between August 2015 and September 2016, her supervisor began demonstrating favoritism toward male subordinates and lighter skinned African-American employees.[4] Throughout Plaintiff's complaint, she identifies several instances supporting her claims of discrimination, and Plaintiff alleges she was ultimately terminated as a result of this discrimination, as well as in retaliation for her previous complaints. For example, Plaintiff alleges that her supervisor began delegating tasks to and exhibiting favoritism toward Plaintiff's male subordinates and circumventing Plaintiff. She further claims that her supervisor showed preferential treatment toward lighter skinned African Americans, citing her supervisor's failure to reprimand such individuals for failing to assist in the preparation of a proposal for re-entry job seekers. She also contends that she was discriminated against due to her age because after she was terminated, Defendant hired an employee who was younger than Plaintiff and paid $10,000 less than Plaintiff was paid.

---

[4] While Plaintiff did not check a box on the complaint that she was discriminated against on the basis of race, she did check the box for discrimination based on color, and the Court will construe her complaint as asserting a claim based on race, as well.

Although the complaint is unclear at this stage, construing Plaintiff's claims liberally, the complaint can fairly be read to allege that Defendant's actions of, inter alia, placing Plaintiff's mugshot on the doors of the Jennings Urban League office, cyber-stalking Plaintiff, and breaking into Plaintiff's social media accounts were done in retaliation for her prior complaints. Thus, such claims survive Defendant's motion to dismiss.

However, there are several claims contained in Plaintiff's complaint that are not actionable under Title VII because Plaintiff fails to allege conduct that was an adverse action linked to her sex, race, color, or national origin, or that the conduct was done in retaliation for a complaint based upon a statutorily protected category. For example, Plaintiff claims that she was retaliated against after she expressed a complaint about SLATE's refusal to honor an invoice and for revoking a workforce executed contract without notice or reason. Such claims fail under Title VII and will be dismissed.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Plaintiff's complaint (ECF No. 5) is **DENIED in part and GRANTED in part**, as set forth above.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of March, 2018.